Victoria **ROUPE**, Plaintiff,

v.

**BAY COUNTY** and Barbara
**Dufresne**, Defendants.

No. 03–10069–BC.

United States District Court,
E.D. Michigan,
Northern Division.

June 23, 2003.

lated state law, specifically the Michigan Whistle-blowers Protection Act, Mich. Comp. Laws §§ 15.361–15.369, and Michigan's public policy. The complaint also includes a count based on 42 U.S.C. § 1983 that is grounded in the First Amendment's speech protection clause. The defendants removed the matter to this Court pursuant to the Court's federal question jurisdiction, *see* 28 U.S.C. §§ 1331, 1441(a), and have now filed a motion to dismiss or, in the alternative, for summary judgment. The Court heard argument of the parties through their respective counsel in open court on June 18, 2003. The parties fortified their motion and response with affidavits, but the material facts do not appear to be in dispute. The Court will treat the defendants' motion as one for summary judgment, and deny it as to the plaintiff's federal claim. Since the motion was brought well before the discovery period has expired, the Court will also deny the motion for summary judgment as to the plaintiff's state law claims, but the defendants may renew that motion after discovery is complete, if appropriate.

Glen N. Lenhoff, Flint, MI, for plaintiff.

John R. McGlinchey, Lansing, MI, for defendants.

### *ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

LAWSON, District Judge.

The plaintiff is the former Chief Deputy Register of Deeds in Bay County Michigan. She was fired from that position by her immediate supervisor, defendant Barbara DuFresne, the Bay County Register of Deeds, after the plaintiff answered questions posed by a county commissioner concerning DuFresne's poor attendance at work. The plaintiff has filed a complaint containing claims that her termination vio-

## I.

The facts of this case are largely undisputed, although the parties not surprisingly differ as to their significance.

Defendant Bay County is a political subdivision of the State of Michigan, and defendant Barbara DuFresne is the elected Register of Deeds for Bay County, Michigan, whose duties and powers are provided by law. Mich. Const.1963, art. 7, § 4; Mich. Comp. Laws § 53.89 *et seq.* The plaintiff, Victoria Roupe, was employed by Bay County as the Chief Deputy Register of Deeds until her discharge on December 31, 2002. By law, the Deputy Register of Deeds holds office "during the pleasure of the register." Mich. Comp. Laws § 53.91.

Defendant DuFresne apparently was absent from the Register of Deeds office during substantial portions of 2001 and 2002. The plaintiff states that DuFresne was both out of the office and largely unavailable from January through March 2002, showed up only a few times in April 2002, and was entirely absent from Mid-May 2002 through Labor Day 2002. Victoria Roupe Aff. ¶ 5. The plaintiff states that Roupe's absence made it difficult to contact her and that DuFresne rarely returned her calls regarding matters of the office. *Id.* ¶¶ 6–8.

Defendant Bay County held a series of budget meetings in August 2002. The plaintiff characterizes these meetings as important annual events in which departmental budgets are tendered and reviewed by the County Board. Pl.'s Br. at 4, 5. The defendants, on the other hand, describe them as "informal meetings" called by the County Executive to chat about office finances with department heads. Defs.' Br. at 2. Because DuFresne did not return any of the plaintiff's telephone calls regarding the 2003 budget, the plaintiff prepared a proposed budget for the coming year herself and appeared at the meeting. Roupe Aff. ¶¶ 12–13. Prior to this time, DuFresne had always prepared the departmental budget. *Id.* ¶ 11.

A budget meeting concerning the Register of Deeds office was held on August 16, 2002 attended by Michael Regulski from the Bay County Finance Office, Robert Redmond, Legislative/Financial Analyst, Mary Dryzga, Budget Accountant, plaintiff Roupe, and two County Commissioners, Scott Holman and Christopher Rupp. Michael Regulski Aff. ¶ 5, Defs.' Ex. 1. There is some corroboration for the plaintiff's claim that the meeting was intended as a formal hearing on departmental budget requests. *See* Regulski Aff. Ex. A. (labeled "2003 Budget Hearing Schedule" and including the meeting in question under this heading). The parties also agree that purpose of the meeting was to present a report on the amount of funding desired for the coming fiscal year, not to investigate any wrongdoing. *Id.* ¶¶ 1, 6.

Following a discussion of overtime compensation needed for Register of Deeds staff, County Commissioner Holman, whom the defendant insists did not have any official role in the meeting, inquired about DuFresne's attendance. Roupe Aff. ¶ 16; Regulski Aff. ¶ 4, 7. The plaintiff initially hesitated in her answer, after which the plaintiff claims she was told by Holman that "[I am] asking you, as a Commissioner, to tell me." Roupe Aff. ¶¶ 17–18. The plaintiff then replied truthfully that DuFresne had hardly been in the office at all for the previous five months. *Id.* ¶ 19. The plaintiff apparently provided no explanation for DuFresne's absence. Regulski Aff. ¶ 7.

DuFresne admits in her affidavit, that she was frequently absent to care for two ill family members, and also indicates that she was repeatedly absent during the three-month period leading up to the budget meeting. She also claims, and Regulski affirms, that her absences were known to County administration. Barbara DuFresne Aff. ¶¶ 3, 7; Regulski Aff. ¶ 8.

DuFresne returned to work on September 4, 2002. Roupe Aff. ¶ 22. Up to that time and through September 11, 2002, DuFresne had not once complained about the plaintiff's work performance. *Id.* ¶ 23. On September 11, 2002, DuFresne informed the plaintiff that she had listened to a tape of a subcommittee meeting discussing merging the offices of the County Clerk and Register of Deeds, and asked the plaintiff what had occurred at the budget meeting. The plaintiff then told her of Commissioner Holman's question and her answer. *Id.* ¶¶ 24, 25.

On September 13, 2003, DuFresne informed the plaintiff that her answer at the hearing had "betrayed" DuFresne, and put her both in a "bad light" and "bad position." *Id.* ¶¶ 26–27. DuFresne states that she was unconcerned about the question and answer, but that she was disappointed that the plaintiff had not told her about the exchange after it occurred, and that she was further concerned about the plaintiff's handling of a backlog of work in the office. DuFresne Aff. ¶ 7. Six days later, the plaintiff began a pre-approved medical leave. Roupe Aff. ¶ 28.

When the plaintiff returned on November 25, 2002, DuFresne promptly informed her that she was "not loyal" to DuFresne and asked her to resign. The plaintiff refused. Roupe Aff. ¶ 29; 11/26/03 Letter from Roupe to DuFresne, Pl.'s Ex. 4. DuFresne then tendered the plaintiff a letter terminating her employment as of the end of the year. The letter provides, in relevant part:

> On November 25, 2002, I advised you that I was most displeased with how the workload in the Register of Deeds Office had been allowed to back up in my absence. I also advised you that I was dissatisfied with your failure to advise me of your statements regarding this Office in my absence. I need not recount our conversation concerning these issues here. Suffice it to say, I requested your resignation, but you declined. I then notified you that your appointment and employment as Chief Deputy would terminated, effective December 31, 2002.

Undated letter from DuFresne to Roupe, Pl.'s Ex. 5. DuFresne insists that the plaintiff was discharged because of her lack of communication and mishandling of office duties, not for her truthful response to a Commissioner or her exercise of any First Amendment rights. DuFresne Aff. ¶ 9. The plaintiff denies that she had per-formed her duties in an unsatisfactory manner. Roupe Aff. ¶ 31.

The plaintiff filed suit on February 18, 2003 in Bay County Circuit Court against defendants Bay County and Barbara DuFresne, alleging state-law claims of whistle-blowing and wrongful discharge, as well as one federal claim for retaliation contrary to 42 U.S.C. § 1983 and the First Amendment.

## II.

■ The parties in this case do not seriously disagree as to the facts of this case, including the statement made by the plaintiff at the budget meeting which is at the heart of this controversy. And the defendant concedes, for the purpose of this motion only, that a motivating cause for the plaintiff's termination was the statement made at that meeting. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Nonetheless, the parties' agreement as to the underlying facts does not mean that summary judgment necessarily is appropriate. Agreement over the facts does not equal agreement as to "the permissible inferences to be drawn from them." *American Mfrs. Mut. Ins. Co. v. American Broadcasting–Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967) *quoted with approval by B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 593 n. 2 (6th Cir.2001). In this case, the parties disagree as to the inferences that properly may be drawn from the plaintiff's statement. In adjudicating a summary judgment motion, the Court views the evidence, including the reasonable inferences that can be drawn from the facts, in the

light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448–49 (6th Cir.2002).

■■■ The First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, prohibits state governments and their political subdivisions from retaliating against most forms of citizen speech. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n. 1, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *Lovell v. City of Griffin*, 303 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Citizens who are also public employees retain this protection, provided that (1) their speech raises a matter of public concern, and (2) their interest in speaking is not outweighed by their employer's interest in maintaining workplace harmony and effectiveness. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999). The first element of the test—public concern requirement—seeks to draw a line between issues "relating to any matter of political, social, or other concern to the community," *Connick*, 461 U.S. at 146, 103 S.Ct. 1684, and those that largely reflect the "quintessential employee beef" about incompetent or insensitive management, *Jackson*, 168 F.3d at 911. The second requirement invokes the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), calling upon the court to determine whether the employee's interest in speaking as she did outweighed the defendants' interests in keeping her silent. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.2001) (citing *Connick*, 461 U.S. at 147–50, 103 S.Ct. 1684). The factors to be considered in weighing the parties' respective interests include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

■■ A public employee who suffers adverse consequences after engaging in protected speech may recover under Section 1983 if she can show that "the First Amendment violation was a substantial or motivating factor" in the defendants' adverse employment action. *Bonnell*, 241 F.3d at 810 (citing *Mt. Healthy*, 429 U.S. at 285, 97 S.Ct. 568). If the decision was motivated by the First Amendment violation, the defendants may vindicate their decision by presenting evidence that they would have taken the same action in the absence of the protected speech. *Ibid.*

■■ There is a parallel line of cases that addresses the First Amendment rights of public employees who hold certain patronage positions. *See Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Generally, dismissals from employment for political patronage reasons violates the First Amendment; however, an exception to this rule exists in the case of public employees who hold positions of confidence or policymaking. Those employees may be dismissed solely on the basis of their political affiliation without offending the First Amendment. *See Elrod*, 427 U.S. at 367, 96 S.Ct. 2673; *Branti*, 445 U.S. at 517, 100 S.Ct. 1287.

These lines of authority converged and were melded together for the first time in this circuit in *Rose v. Stephens*, 291 F.3d

917 (6th Cir.2002). In that case, the court considered whether the *Elrod/Branti* exception operated to prevent a public employee in a confidential or policymaking position from maintaining an action under Section 1983 based on adverse employment action that resulted after the employee spoke out on a matter of public concern. The court answered the question in the affirmative, setting down the following rule:

> We ... hold that where an employee is in a policymaking or confidential position and is terminated for speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law.

*Id.* at 922. The court reasoned that the Supreme Court has endorsed the view that government has "a legitimate interest in securing employees who will loyally implement its policies." *Ibid.* (citing *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 74, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). The court found that allowing dismissal of public employees serving in confidential or policymaking positions "is an appropriate means of promoting that interest because the government already enjoys the right to choose or dismiss those employees on the basis of their political views." *Ibid.* The court did not discard the *Pickering* balancing process altogether when confidential or policymaking employees invoked the First Amendment. Rather, the court concluded that "the government's interest in appointing politically loyal employees to certain positions converges with its interest in operating an efficient workplace" so that the "nature of the position itself weights the balance in favor of government." *Id.* at 923.

■ In determining whether the *Elrod/Branti* thumb may be placed on the *Pickering* scale, the *Rose* court set down two inquiries. First, it must be determined whether the employee occupied a position in which party or personal loyalty "is an appropriate requirement for the effective performance of the public office involved." *Id.* at 924 (quoting *Branti,* 445 U.S. at 518, 100 S.Ct. 1287). Second, the court must determine whether the speech which provoked the adverse employment action "addressed political or policy-related issues." *Ibid.*

In addressing the first inquiry, the court turned to the decision in *McCloud v. Testa,* 97 F.3d 1536 (6th Cir.1996), a political patronage case that did not involve protected speech issues. There, the court of appeals set forth four categories of employees subject to the *Elrod/Branti* exception:

> **Category One:** positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
>
> **Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
>
> **Category Three:** confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions or confidential advisors.
>
> **Category Four:** positions that are part of a group of positions filled by balanc-

ing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

97 F.3d at 1557 (footnotes omitted).

■■■ In this case, the plaintiff's statutorily-defined job is a prototypical Category Two position. The parties do not dispute this point, nor could they. Barbara DuFresne herself, as the Register of Deeds, is a Category One policymaker. Michigan law provides for the appointment of a deputy register of deeds who shall hold "office during the pleasure of the register." Mich. Comp. Laws § 53.91. Michigan law further states that the Deputy Register of Deeds is to perform the duties of the Register of Deeds when the office of Register of Deeds is vacant or when the Register is absent or otherwise unable to perform her duties. Mich. Comp. Laws § 53.92. Although neither party has provided a detailed summary of the plaintiff's duties as Deputy Register, it is clear that she fulfills the Register's duties in the Register's absence by operation of law, and that she did so here by drafting a proposed budget for the Register's office when DuFresne failed to fulfill that responsibility of her office. Furthermore, definitions provided by state law are entitled to deference. *See Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 372 (6th Cir.2002). Even though her other duties may be largely ministerial, the plaintiff's responsibility for standing in the shoes of the Register during her absence places her in Category Two under *McCloud* and subjects her to dismissal for perceived disloyalty. *See Hall v. Tollett*, 128 F.3d 418, 425–26 (6th Cir.1997); *Hoard v. Sizemore*, 198 F.3d 205, 215 (6th Cir.1999); *see also Hager*, 286 F.3d at 374 (holding that a position need only fall "with reasonable certainty" into one of the *McCloud* categories to come within the *Elrod/Branti* exception).

Whether the plaintiff's speech "addressed political or policy-related issues" presents a close question. The defendants urge the Court to find that any speech by a confidential or policymaking employee that involves a matter of public concern automatically satisfies the second *Rose* requirement. However, the *Rose* court did not intend to draw such a bright line, nor do the cases from other circuits on which it relied support such a rule. For instance, in *Bonds v. Milwaukee County*, 207 F.3d 969 (7th Cir.2000), the court endorsed a "categorical exception" for policymaking employees under the *Pickering* balancing process that favored the government. However, the court stopped well short of creating a *per se* rule permitting discharge of such employees for any job-related speech. Citing *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1221 (7th Cir.1994) for the proposition that the government cannot "terminate a policymaking employee for speech criticizing her employer's abuse of office because the speech did not involve her political or policy viewpoints," the court noted that the *Elrod/Branti* exception "does not immunize public employer action unconnected to and unmotivated by need for political loyalty." *Bonds*, 207 F.3d at 979. The court reasoned that the exception does not apply when the statements do "not implicate the employee's politics or substantive policy viewpoints" since such speech "runs too remote from the interests that animate the exception." *Ibid.*

Similarly, in *Flynn v. City of Boston*, 140 F.3d 42 (1st Cir.1998), the court found no First Amendment protection for public employees who voiced their opposition to the manner in which their politically-appointed superior administered a public program. However, the court focused not only on the nature of the employees' positions, but also on the content of the speech, and established a "reasonable

working rule" that permitted the governmental employer, under the *Elrod/Branti* exception, to consider the employee's "substantive views on agency matters" when making hiring or retention decisions. *Id.* at 47. Nonetheless, the court noted: "This does not mean that anything goes for policy-related positions: this would be a different case if an executive were fired for reporting a crime or fraud or for expressing adherence to one church or another." *Ibid.*

Finally, in *Barker v. City of Del City,* 215 F.3d 1134 (10th Cir.2000), the court recognized that the *Elrod/Branti* exception applied in speech cases as it did in political association cases, but only when the speech touched upon the employee's "politics or substantive viewpoints." *Id.* at 1139 (quoting *Bonds,* 207 F.3d at 979). Thus, it determined that the court must apply *Pickering* balancing to an employee's "speech on a matter of public concern unrelated to her politics or substantive policy positions, even though she is also a policymaking employee to whom the *Elrod/Branti* line of cases applies." *Ibid.*

This Court therefore must reject the defendants' argument that any speech by a policymaking or confidential employee on a matter of public concern relating to the employing governmental unit automatically invokes the *Elrod/Branti* exception. That position approximates the Ninth Circuit approach represented by *Fazio v. City and County of San Francisco,* 125 F.3d 1328, 1332 (9th Cir.1997). The *Rose* court specifically rejected that view, which eschews consideration of the content of speech, and permits rejection of First Amendment retaliation claims once the employee is found to be in a confidential or policymaking position. Rather, the Sixth Circuit directs lower courts to examine the content of speech, since statements touching on matters of public concern that do not implicate policy, betray confidence, or portend disloyalty cannot support the *Elrod/Branti* exception.

■ The specific statement in this case, according to the plaintiff, was made at a budget meeting attended by a Bay County commissioner, among others. In response to a question posed by the commissioner as to when Barbara DuFresne had last been in her office, the plaintiff stated "that Defendant DuFresne had been to work approximately one week in the past five months." Aff. of Pl. ¶ 19. Because this statement was made at a budget meeting at which staffing issues were allegedly discussed, the defendants argue that the plaintiff's statement was a comment on policy, or perhaps a criticism of DuFresne's attendance or work habits, or a breach of confidence. The plaintiff responds that she was not commenting on policy or DuFresne's work performance; rather she was merely responding to an inquiry by an elected public official in a truthful way.

The Court finds that either conclusion reasonably could be drawn from these facts. A listener could have inferred criticism from the plaintiff's answer to the commissioner's questions, just as readily as one could perceive the answer to constitute a neutral, factual reply to an inquiry that the commissioner was entitled to make. Because the Court at this stage of the proceedings is obliged to view the facts and draw all inferences in favor of the plaintiff, *see Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505; *Rodgers,* 289 F.3d at 448–49, the Court will accept the inference that is consistent with a policy-free, noncritical, truthful statement.

But even if the statement was intended to constitute a critical comment on DuFresne's performance in office, the Court would not find that the *Elrod/Branti* exception divests the plaintiff of the protection of the First Amendment. DuFresne's

termination letter to the plaintiff assigned as cause DuFresne's "dissatisf[action] with [the plaintiff's] failure to advise me of your statements regarding this Office in my absence." Pl.'s Br. Ex. 5. The plaintiff asserts that DuFresne felt "betrayed" by the plaintiff's revealing DuFresne's absence from office to the commissioner. Aff. of Pl. ¶ 26. Drawing inferences in favor of the plaintiff, it is entirely reasonable to conclude that the plaintiff was critical, not of any policy or management decision, but of DuFresne's nonfeasance, abandonment of her responsibilities, or abuse of office. It might be argued that DuFresne's demand of loyalty from her appointee extended to an expectation that the plaintiff would cover up these misdeeds. Such speech cannot be said to "implicate the employee's politics or substantive policy viewpoints," nor can the Court conclude that it is outweighed by a legitimate government interest in silencing the plaintiff. Government policy ought to encourage not only loyalty to elected officials, but also truthful responses to valid inquiries. No public official has a right to expect that his or her subordinate will prevaricate when asked a direct question touching on such basic matters as whether the officeholder is showing up for work. Not only is the *Elrod/Branti* exception inapplicable to speech of this nature, but the *Pickering* balance tips quite decidedly in favor of First Amendment protection.

The Court finds, therefore, that the plaintiff may proceed on her claim under 42 U.S.C. § 1983, and that the defendants are not entitled to judgment on that claim as a matter of law.

■■■ The defendants also attack the plaintiff's theories based on the Michigan Whistleblower's Protection Act (WPA) and violation of public policy. A claim under the WPA requires the plaintiff to plead and prove that she was engaged in activity protected by the WPA, that the defendants

discharged her, and that a causal connection exists between the protected activity and the discharge. *Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 399, 572 N.W.2d 210, 212 (1998). To prove a claim of wrongful discharge contrary to public policy, the plaintiff must show a preexisting employment relationship, that the defendants terminated that relationship, and that the employment was terminated for a reason contrary to Michigan public policy. *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 695, 316 N.W.2d 710, 711 (1982). The plaintiff has stated the requisite elements in her pleadings. Moreover, because the summary judgment was filed early on in this process, primarily to obtain a ruling on the First Amendment issue, no meaningful discovery has taken place on these potentially fact-intensive claims. Summary judgement, therefore, would be premature. *Vance by and through Hammons v. United States*, 90 F.3d 1145, 1149–50 (6th Cir.1996).

### III.

The Court finds that the defendants have not established that they are entitled to judgment as a matter of law on the plaintiff's federal claim based on 42 U.S.C. § 1983 and grounded in the First Amendment. The case is not yet in a posture to address the plaintiff's remaining claims.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss or for summary judgment [dkt # 8] is **DENIED.** The defendant may renew the motion as to the state-law counts after the close of discovery and in accordance with the Case Management and Scheduling Order entered on May 2, 2003.