Tommie Jo **MARSILIO**, Plaintiff,

v.

Victor **VIGLUICCI**, Defendant.

**Case No. 5:11cv1974.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 14, 2013.

838

Christy B. Bishop, Dennis R. Thompson, Thompson & Bishop, Akron, OH, for Plaintiff.

Kimberly Vanover Riley, Montgomery, Rennie & Jonson, Cleveland, OH, Linda L. Woeber, Montgomery, Rennie & Jonson, Cincinnati, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

Before the Court is defendant's motion for partial judgment on the pleadings. (Doc. No. 14.) Plaintiff filed an opposition to the motion (Doc. No. 20), to which defendant replied (Doc. No. 21). Pursuant to the Court's January 25, 2010 order of reference (Doc. No. 6), the magistrate judge issued a report and recommendation ("R & R") (Doc. No. 29), recommending that the Court grant defendant's motion. Plaintiff filed objections to the R & R (Doc. No. 34) and, with leave of the Court, plaintiff supplemented her objections (Doc. No. 38). In conjunction with her objections, plaintiff also filed a motion to convert defendant's motion to a motion for summary judgment. (Doc. No. 39.) Defendant filed opposition briefs to plaintiff's objections (Doc. No. 49) and to plaintiff's motion to convert (Doc. No. 48).

For the reasons that follow, defendant's motion for partial judgment on the pleadings is **GRANTED**.

## I. BACKGROUND

The factual allegations in this case, as drawn from the plaintiff's complaint and from the documents referred to therein, are largely undisputed and are outlined thoroughly within the magistrate judge's R & R. Plaintiff does not object to the magistrate judge's recitation of the factual allegations, but only to her analysis thereof and her legal conclusions. Accordingly, the Court will **ADOPT** the factual and procedural background set forth in the R & R (Doc. No. 29 at 162–64) without alteration or addition. In order to provide context for the discussion herein, however, the Court will briefly relate the basic factual background and procedural events that give rise to the Court's ruling.

Defendant seeks judgment on the pleadings as to Count I of the complaint, which alleges that defendant, who was the elected Portage County Prosecutor, violated 42 U.S.C. § 1983 when he terminated plaintiff from her position as an assistant county prosecutor for exercising her First Amendment right to freedom of speech.[1] Specifically, on September 14, 2009, defendant told plaintiff, then a candidate for the elected public office of county municipal judge, to stop circulation of a proposed campaign advertisement that she had distributed among her campaign committee and her political party's central committee, and to apologize to her political opponent or face termination. The advertisement stated, "The 'Good Old Boys' Say elect Kevin Poland ... Real People Say Elect Tommie Jo Marsilio ... She is **not** a member of the **Ravenna 'Good Old Boys' corruption club.**" (Doc. No. 14–2) (emphasis and ellipses in original).

On September 14, 2009, plaintiff responded to defendant by memo, advising him that the speech at issue was protected political speech. (Doc. No. 14–3.) The memo indicated that plaintiff would cease distribution of the advertisement, but that she would not apologize to Kevin Poland

---

1. The complaint also alleges that defendant's conduct violated plaintiff's equal protection rights guaranteed by the Fourteenth Amendment (Count II) and constituted sex discrimination in violation of state law (Count III), on the grounds that male employees purportedly made similar comments but were not disciplined by defendant and because defendant purportedly paid his female employees less than comparable male employees. Defendant's present motion did not seek judgment on these claims.

because she had done nothing wrong. (*Id.*)

On September 15, 2009, defendant replied to plaintiff by letter, reiterating his demand that she no longer circulate the proposed advertisement and that she apologize to her opponent or face termination at the end of the workweek. (Doc. No. 14–4.) When plaintiff did not comply with defendant's directions, he terminated her employment on September 18, 2009.

Defendant moves for partial judgment on the pleadings as to Count I on the grounds that plaintiff has not asserted a cognizable First Amendment claim. He also asserts that he is entitled to qualified immunity. In support of his motion, defendant submitted plaintiff's proposed advertisement, as well as the correspondence between himself and plaintiff. He asserts that the Court can properly consider these documents as part of the pleadings without converting his motion to one for summary judgment because plaintiff referred to those documents in her complaint and they are central to her claims. (Doc. No. 14–1 at 90.)

In opposition, plaintiff argues that issues of fact exist that preclude partial judgment for defendant on the pleadings. Further, plaintiff indicates in her opposition brief that she does not challenge defendant's assertion that the Court can consider the attachments to defendant's motion without converting his motion to one for summary judgment. (Doc. No. 20 at 118.) Indeed, she attached to her opposition brief an additional memo that she purportedly sent to defendant in response to his September 15, 2009 letter of termination. (Doc. No. 20–2.)

Upon consideration of the pleadings and the documents submitted by the parties, the R & R recommends that the Court grant defendant's motion because, under well-established case law, plaintiff's former position as an assistant county prosecutor

was a confidential/policymaking position and, therefore, she did not enjoy protection from being terminated for speech related to her political or policy views. (Doc. No. 29 at 161–62.) Further, the magistrate judge found that defendant is entitled to qualified immunity in his individual capacity. Plaintiff raises several objections to the R & R.

## II. DISCUSSION

### A. Standard of Review

Under Fed.R.Civ.P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C. § 636(b)(1)(C).

▬ A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed.R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n. 3, 127 S.Ct. 1955 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

▬ Under Rule 12(c), a party may move for judgment on the pleadings any

time after the pleadings are closed but early enough not to delay trial. Fed. R.Civ.P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998)).

■ "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79, 127 S.Ct. 1955. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 127 S.Ct. 1955. The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991) (citation omitted).

## B. Review of Matters Outside the Pleadings

Despite her previous agreement that the Court could properly consider the par-ties' attachments without converting defendant's motion to one for summary judgment, plaintiff now objects to the magistrate judge's consideration of those documents and contends that the magistrate judge should have converted defendant's motion. To this end, plaintiff has also filed a motion to convert defendant's motion to one for summary judgment, urging that the Court's resolution of the issues presented in defendant's motion requires reliance upon matters outside the pleadings and evidence uncovered to date in discovery, but not previously presented to the magistrate judge.

■ Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989)), and a court considering such matters typically will convert a Rule 12 motion to a motion for summary judgment. Fed.R.Civ.P. 12(d). However, the Sixth Circuit has adopted the Seventh Circuit's view that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Weiner*, 108 F.3d at 88 (quoting *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir.1993)).

■ With regard to the documents attached to defendant's motion, i.e., the advertisement at issue and the letters dated September 14, 2009 and September 15, 2009, the Court finds that the magistrate judge's consideration thereof was proper. It cannot reasonably be disputed that each of these documents were referred to in plaintiff's complaint, Compl. ¶¶ 1, 6–13, 20, and are central to her claims and, therefore, are considered part of the pleadings. *Id.*; *Clorox Co. Puerto Rico v. Proctor &*

*Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir.2000) (advertising copy referred to in complaint alleging claim of false advertisement and attached to defendant's motion to dismiss may be considered without converting Rule 12(b)(6) motion into one for summary judgment); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384–85 (10th Cir.1997) (letter referred to in complaint may be considered on Rule 12(b)(6) motion without triggering conversion to summary judgment); *Samara v. United States,* 129 F.2d 594, 597 (2d Cir.), *cert. denied,* 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942) (same). Accordingly, the Court accepts the magistrate judge's recommendation that the Court may properly consider these three documents in ruling on defendant's Rule 12(c) motion.

The same cannot be said, however, of the magistrate judge's consideration of plaintiff's September 18, 2009 letter to defendant, which was not referred to in the complaint and, as a result, may not be considered by the Court in ruling on defendant's motion for judgment on the pleadings. *Weiner,* 108 F.3d at 88. Accordingly, the Court rejects the magistrate judge's recommendation that the Court consider this letter in ruling on defendant's Rule 12(c) motion.

Plaintiff does not appear to dispute the magistrate judge's consideration of any of the documents referenced in her complaint (Doc. No. 39 at 258), but instead argues that these "documents are not the entire spectrum of evidence in this case that this Court *must* consider when assessing the merits of defendant's motion." (Doc. No. 39 at 258) (emphasis added). To this end, plaintiff urges the Court to consider a newspaper article and witness deposition testimony, which she contends raise genuine issues of material fact. (Doc. Nos. 39–2, 40, 41.)

■ It is solely within the Court's discretion, however, to either consider these matters and convert the motion to one for summary judgment or to exclude the extra-pleading materials and apply the standard set forth in Rule 12(c). *See Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund,* 203 F.3d 926, 931 (6th Cir.2000); *see also Batt v. United States,* 976 F.Supp. 1095, 1096–97 (N.D.Ohio 1997) ("The decision to exclude material outside the pleadings is entirely within the discretion of the trial court.").

■ Here, the Court will exclude the extra-pleading matters offered by plaintiff and treat defendant's motion as one under Rule 12(c) for several reasons. First, given the status of the litigation *at the time* defendant filed his motion, converting a Rule 12(c) motion into one for summary judgment would have been premature. Little or no discovery had taken place to allow the parties to argue, and the magistrate judge to determine, whether a genuine issue of material fact exists. *See McFarland v. Air Eng'g Metal Trades Council,* No. 4:05–CV–108, 2007 WL 1795669, at *1 (E.D.Tenn. June 19, 2007) (citations omitted). Moreover, plaintiff offers no support for her assertion that Rule 12(d) contemplates conversion of a Rule 12 motion simply because evidence exists beyond that properly attached to the pleadings or incorporated therein by reference. To the contrary, the purpose of a motion under Rule 12(c) is to test the sufficiency of the complaint, without requiring the parties to engage in expensive and time-consuming discovery and without reaching the merits of the case. *See id.; see also, Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC,* 702 F.Supp.2d 826, 831 (N.D.Ohio 2010) ("The purpose of a motion under either rule is to test the sufficiency of the complaint-not to decide

the merits of the case."); *Glasstetter v. Rehab. Servs. Comm'n*, No. 2:07–CV–125, 2008 WL 886137, at *4 (S.D.Ohio Mar. 28, 2008).

Finally, as discussed more fully below, the arguments set forth in defendant's motion are legal, rather than factual, in nature. It is plaintiff who attempts to use materials outside the pleadings to convert defendant's motion to one for summary judgment. If defendant had wished to file a motion under Rule 56, he would have done so. Instead, defendant chose to proceed under Rule 12(c), and objects to plaintiff's extra-pleading evidence. "Fairness dictates that, absent some persuasive justification, the moving party should be able to obtain the benefit of the particular rule he or she has chosen to move under." *Wilson v. Karnes*, No. 2:06–CV–392, 2007 WL 4207154, at *3 (S.D.Ohio Nov. 26, 2007). Plaintiff offers no such persuasive justification.

Accordingly, for the foregoing reasons, the Court denies plaintiff's motion to convert defendant's Rule 12(c) motion into a motion for summary judgment under Rule 56 and overrules her objection that the magistrate judge should have recommended conversion of defendant's motion. Consequently, the Court will not consider the following when ruling on defendant's motion for partial judgment on the pleadings: (1) the September 18, 2009 letter offered by plaintiff in opposition to defendant's motion for judgment on the pleadings; and (2) the newspaper article and deposition testimony offered by plaintiff in her objections to the R & R.

**C. First Amendment Retaliation Claim**

 Count I of plaintiff's complaint alleges a claim for retaliatory discharge in violation of 42 U.S.C. § 1983. To establish a prima facie case of retaliation under § 1983, plaintiff must demonstrate that she was engaged in a constitutionally protected activity; that she was subjected to adverse action or deprived of some benefit; and that the protected activity was a substantial or motivating factor in the adverse action. *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir.2004) (citation omitted). The magistrate judge concluded that plaintiff failed to satisfy the first prong of this three-part test and, therefore, analysis of the remaining two prongs was unnecessary. For the reasons that follow, the Court agrees.

 Plaintiff asserts that she was terminated for engaging in constitutionally protected speech (or for refusing to speak). In order for a public employee to make out a claim for retaliatory discharge based on protected speech, she must satisfy three elements, as follows:

> 1) the speech involved a matter of public concern; ... 2) the interest of the employee as a citizen, in commenting upon matters of public concern, outweighs the employer's interest in promoting the efficiency of the public services it performs through its employees; ... and 3) the speech was a substantial or motivating factor in the denial of the benefit that was sought.

*Perry v. McGinnis*, 209 F.3d 597, 604 (6th Cir.2000) (internal citations and quotations omitted); *see also Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Plaintiff cannot satisfy this test.

### 1. Matter of Public Concern

 Whether the speech at issue is a matter of public concern is a question of law for the Court. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir.2008). "Whether an employee's speech addresses a matter of public con-

cern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. Defendant concedes, only for purposes of his motion for judgment on the pleadings, that plaintiff engaged in speech protected by the First Amendment. Accordingly, the magistrate judge concluded that it was not necessary for the Court to engage in an analysis regarding this prong of the *Connick* test and determined that plaintiff's speech constituted speech on a matter of public concern. Plaintiff has not objected to this portion of the R & R and agrees that this prong of the *Connick* test is not at issue. (Doc. No. 38 at 241.) Consequently, the Court accepts this portion of the R & R.

### 2. The Pickering Balancing Test and the Elrod/Branti Exception

■ Because the speech at issue in this case relates to a matter of public concern, the Court must next employ the balancing test outlined in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), to determine if plaintiff's free speech interests outweigh the efficiency interests of her government employer. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir.2006) (citation omitted).

■ The Sixth Circuit, however, "employs a different test when a claim is brought by an employee who held a policymaking or confidential position." *Silberstein v. City of Dayton*, 440 F.3d 306, 319 (6th Cir.2006) (citing *Rose v. Stephens*, 291 F.3d 917, 922 (6th Cir.2002)). In *Rose*, the Sixth Circuit held "that, as a matter of law, the ... *Pickering* test favors the governmental employer 'where a confidential or policymaking public employee is discharged on the basis of speech related to [her] political or policy views....'" *Latham v. Office of Attorney Gen. of State of*

*Ohio*, 395 F.3d 261, 265 (6th Cir.2005) (quoting *Rose*, 291 F.3d at 921). This holding is an extension of the *Elrod/Branti* line of cases, in which the Supreme Court recognized that, although patronage dismissals ordinarily are unconstitutional, a public employer may terminate a public employee in a policymaking or confidential position solely because of her political affiliation without violating the First Amendment. *Rose*, 291 F.3d at 921 (6th Cir.2002) (citing *Elrod v. Burns*, 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)).

The R & R recommends that judgment on the pleadings be granted in favor of defendant because plaintiff's political speech was not constitutionally protected as she was a confidential/policymaking employee and, therefore, her First Amendment rights were subordinated to defendant's interest as a matter of law under the *Elrod/Branti/Rose* exception.

Plaintiff raises the following objections to the magistrate judge's analysis of her First Amendment retaliation claim:

1. The magistrate judge engaged in fact-finding impermissible for a motion for judgment on the pleadings;

2. The magistrate judge misapplied the law applicable to speech compelled by an elected government official of his employee, as the speech required in this case was not job-related nor related to the policies or practices of the Portage County Prosecutor's Office; and

3. The magistrate judge ignored the fact that the compelled speech in this case was adverse to the interests of the Plaintiff, was not job-related and would have caused her injury.

(Doc. No. 34.) She asserts there is no evidence that an apology to Kevin Poland

would implicate or involve the prosecutor's office and, in fact, was totally unrelated to her employment and, therefore, the balance under *Pickering* weighs in her favor.

Plaintiff's supplement to her objections contends that both the defendant and the magistrate judge focused on the incorrect facts and law and neither addressed nor considered that the compelled apology would have been contrary and harmful to her interests and to her personal beliefs. Plaintiff argues that her political affiliation, association, or loyalty "are simply inapposite" to the determination of her First Amendment claim. (Doc. No. 38 at 243.)

■■■■ Contrary to plaintiff's assertions, however, free speech claims and association claims are not subject to different First Amendment analyses. Indeed, the Sixth Circuit has held that "no logical reason exists for distinguishing between speech and association in applying *Connick* to first amendment claims[.]" *Monks v. Marlinga*, 923 F.2d 423, 425 (6th Cir. 1991) (citation omitted); *see also, Scarbrough*, 470 F.3d at 260 (noting "the analytic tools for adjudicating First Amendment retaliation claims" are the same whether the plaintiff's claim arises under the free speech clause or the free association clause). Moreover, whether plaintiff was terminated in retaliation for speaking or for failing to speak when compelled to do so, the analysis of her claim remains the same. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (noting the difference between compelled speech and compelled silence is a "difference ... without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say."). Thus, to the extent that plaintiff objects that the *Elrod/Branti/Rose* line of cases is inapplicable on these grounds, her

objections are without merit and are overruled. *Rose*, 291 F.3d at 921 (*Elrod/Branti* rule applies whether employee was discharged because of actual speech related his political or policy views, rather than for political affiliation alone); *see also, Simasko v. Cnty. of St. Clair*, 417 F.3d 559 562–63 (6th Cir.2005) (no constitutional violation under *Elrod/Branti* exception where public employer terminated employee in policymaking or confidential position for his refusal to support supervisor's campaign for an elected judgeship).

Turning to the magistrate judge's application of the *Elrod/Branti* exception to this case, the R & R addressed two inquiries: (1) whether plaintiff occupied a policymaking or confidential position; and (2) whether the speech (or compelled speech) at issue addressed matters related to plaintiff's political or policy views.

### a. Policymaking or Confidential Position

■■■■ In determining whether the 'policymaking or confidential' requirement has been met, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. 1287. The Sixth Circuit has articulated four categories of public employees who will always fall within the *Elrod/Branti* policymaking or confidential employees exception:

(1) positions specifically named in relevant law to which discretionary authority in carrying out law enforcement or political policy is granted; (2) positions to which a significant amount of category-one authority has been delegated, or positions not specifically named by law but inherently possessing category-one

type authority; (3) confidential advisors to category-one position-holders; or (4) positions that are part of a group of positions filled by balancing out political party representation or by balancing out selections made by different government bodies.

*Silberstein,* 440 F.3d at 319 (citing *McCloud v. Testa,* 97 F.3d 1536, 1557 (6th Cir.1996); *Rose,* 291 F.3d at 924). The "relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office." *Monks,* 923 F.2d at 425 (citation omitted). "An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position." *Elrod,* 427 U.S. at 368, 96 S.Ct. 2673.

The R & R found, as a matter of law, that plaintiff's position as an assistant county prosecutor in Ohio falls within the *Elrod/Branti* exception. In doing so, the magistrate judge relied on two Sixth Circuit cases, *Monks* and *Simasko,* holding that assistant county prosecutors in Michigan fall within the exception in light of a state statute's imposition of "the inherent policy-making responsibilities of the prosecutor on the assistant prosecutor[.]" *Monks,* 923 F.2d at 426; *Simasko,* 417 F.3d at 563. The magistrate judge concluded that an Ohio statute authorizing county prosecutors to appoint assistants, Ohio Rev.Code § 309.06, as well as Ohio Attorney General Opinions flushing out the assistant county prosecutor's role, defined that role in a similarly broad manner. (Doc. No. 29 at 174–75.) She also noted

that, even if *Simasko* and *Monks* were not determinative, plaintiff's position would constitute a category two position under *McCloud.* In reaching this conclusion, the magistrate judge relied on a Southern District of Ohio case holding that an elected Ohio county prosecutor's interest in having assistant prosecutors "of his choosing, in whom he presumably could repose both trust and confidence, outweighed" his assistant's First Amendment right to speak on matters of public concern. *Collins v. Allen,* No.1:04–CV–572, 2006 WL 2505928, at *8–9 (S.D.Ohio Aug. 29, 2006).[2]

▮ Plaintiff objects to this conclusion arguing, "there is no evidence that [she] was a 'policy-making' employee[,]" and further, that "[s]he was not an elected official." (Doc. No. 38 at 243.) But there is simply no requirement that plaintiff's position *itself* be an elected one to fit the 'policy-making' or 'confidential' employee exception. Further, the relevant focus of the inquiry is not on the work *actually* performed by plaintiff, but on the inherent duties of her position. *Monks,* 923 F.2d at 425 (citation omitted). Where those duties can be defined by operation of state law, it is not necessary to consider evidence regarding plaintiff's job as it was actually performed by plaintiff. *Id.* at 425.

▮ Plaintiff's position is a *McCloud* category two position as a matter of law. Under Ohio law, "an assistant prosecuting attorney is a statutory agent of the elected prosecutor[ ] ... and is authorized to act on the prosecutor's behalf as one who is 'necessary for the proper performance of

---

2. The magistrate judge also relied upon a purported acknowledgment by plaintiff that she performed as defendant's alter ego when she stated in her memo that the county had saved "tens of thousands of dollars on [her] watch." (Doc. No. 29 at 177 (quoting Doc. 14–3).) Whether or not plaintiff *actually* performed in defendant's stead, however, is ir-

relevant to the policy-making/confidential employee inquiry. The "relevant focus of analysis is the *inherent* duties of the position in question, not the work *actually* performed by the person who happens to occupy the office[.]" *Monks,* 923 F.2d at 425 (citation omitted) (emphasis added).

the duties of [the] office....'" *Joyce v. Godale*, No. 2006–G–2692, 2007 WL 313938, at \*4 (Ohio Ct.App. Feb. 2, 2007) (quoting Ohio Rev.Code § 309.06(A)). Further, "R.C. 309.06(A) does not appear to place any limitation upon the ability of a prosecuting attorney to delegate his work to other attorneys." *State ex rel. Sartini v. Trumbull Twp. Volunteer Fire Dept.*, 163 Ohio App.3d 603, 607, 839 N.E.2d 938 (Ohio Ct.App.2005). The elected county prosecutor's broad authority to delegate his responsibilities to assistant prosecutors in his employ supports the magistrate judge's conclusion that the job of an assistant prosecutor is a category two policymaking position under *McCloud*. *Monks*, 923 F.2d at 426 ("Because Michigan law statutorily imposes the inherent policymaking responsibilities of the prosecutor on the assistant prosecutor, we hold that the job of assistant prosecutor is a policymaking position."); *see also Latham*, 395 F.3d at 269 ("where the inherent duties of the employee are broad and limited primarily by the discretion of the policymaker, it is likely that the employee is herself a confidential or policymaking employee under *Elrod*."); *Roupe v. Bay Cnty.*, 268 F.Supp.2d 825, 832 (E.D.Mich.2003) (deputy register of deed's statutorily imposed "responsibility for standing in the shoes of the Register [of Deeds] during her absence places her in Category Two under *McCloud* and subjects her to dismissal for perceived disloyalty."). Accordingly, the magistrate judge did not err in concluding that plaintiff's assistant county prosecutor position constituted a policymaking/confidential position based on that position's inherent duties, and plaintiff's objection to this conclusion is overruled.

### b. Speech Related to Political or Policy Views

Next, the Court must determine whether plaintiff's speech (or refusal to speak) which provoked her termination was "related to [her] political or policy views." *Rose*, 291 F.3d at 921 (the exception applies "in situations where the employee's speech relates to either his political affiliation or substantive policy."). "[T]he *Elrod/Branti* exception has been interpreted to permit a hiring authority to terminate a policymaking or confidential employee based on 'political differences of any kind[,]'" *Simasko*, 417 F.3d at 562 (quoting *Williams v. City of River Rouge*, 909 F.2d 151, 153 n. 4 (6th Cir.1990)), "even if that employee never evidences a policy disagreement with his employer." *Id.* at 564 (citations omitted). Thus, in *Simasko*, the Sixth Circuit held that an assistant county prosecutor's decision not to support the chief prosecutor's campaign for a local "judgeship election was sufficient to implicate loyalty concerns that could have caused [the county attorney] to lose confidence in [the assistant]." *Id.* at 563. The court observed, "the mere fact that an employee is affiliated with an opposing political party, however quietly, can cause the employer not to trust the employee to implement fully the employer's practices." *Id.* (citing *Latham*, 395 F.3d at 266–67).

The R & R notes that the parties agree that plaintiff's speech, which related to a judicial election, concerned plaintiff's political views. Indeed, plaintiff's complaint states as much. Plaintiff contended in her opposition brief, however, that in order for *Rose* to apply, the speech at issue must be job-related. The magistrate judge rejected this contention, finding *Rose* and *Simasko* controlling and concluding that plaintiff's refusal to apologize to her political opponent was factually indistinguishable from the plaintiff's refusal in *Simasko* to support the chief prosecutor's campaign for judgeship, which also did not specifically involve job-related speech. (Doc. No. 29 at 172–73.) In either case, the plaintiff's speech implicated loyalty

concerns (i.e., the plaintiff's political or substantive policy views) that could have caused the employer to lose confidence in the employee. Accordingly, the magistrate judge concluded that this prong of the *Elrod/Branti* exception is met.

Plaintiff objects that the magistrate judge erred in applying *Rose* and *Simasko* to her case because: (1) her speech was unpublished; (2) her speech did not implicate or address her employment; and (3) the magistrate judge failed to consider that the compelled apology would harm plaintiff's personal and political interests, which harm was not outweighed by defendant's interest in promoting efficiency in his office.[3] (Doc. No. 38 at 243–46.) The Court will address each of these objections in turn.

 First, plaintiff argues that speech must be public for the presumption in favor of the government to apply, and that her speech (i.e., the proposed political advertisement) was not made public, but rather was circulated only among her campaign and party leaders. Therefore, she asserts, the presumption of *Rose* should not apply here. The Sixth Circuit, however, has held that the fact that an employee's speech was not made public does not prevent the application of the *Rose* presumption in favor of the government. *Latham*, 395 F.3d at 265–66 (intra-office nature of speech did not affect the application of *Rose*). "In fact ... the speech at issue in *Rose* was also never made 'public.' Rose only sent his memorandum to his superior ... and his superior's superior...." *Id.* at 265–66. The Court's focus in applying *Rose* is "on how the speech ... affect[s] the employer's ability to maintain a working relationship with his or her employees, rather than whether the speech was 'public' or intra-office." *Id.* at 266 (citing *Rose*, 291 F.3d at 923). Accordingly, any distinction between the public nature of plaintiff's speech and that of the speech in *Rose* does not affect the application of *Rose* to this case. *Id.*

Next, plaintiff argues that the application of the *Rose* presumption in favor of the government is limited to speech on job-related issues and that her refusal to apologize to her political opponent does not relate to anything concerning her employer. She contends that her case is less like *Simasko* and more like *Scarbrough*, a case dealing with a school district's refusal to renew its superintendent's contract when he agreed to speak about his religious beliefs at a church with a predominantly homosexual congregation. Plaintiff contends that, as in *Scarbrough*, her speech or refusal to speak was on a matter of public concern that did not relate to anything

---

**3.** Plaintiff also implies that the Court cannot rely on *Simasko* because the issue on appeal in that case was qualified immunity. She contends that, since she intends to file a stipulation of dismissal as to her claims against defendant in his individual capacity, any immunity issues are moot. Irrespective of the procedural posture of *Simasko*, however, the legal issues therein are identical to the ones the Court faces in this case. As the court recognized in *Simasko*, the first step for the courts in any qualified immunity analysis is determining whether, based upon the applicable law, the facts viewed in light most favorable to plaintiff show that a constitutional violation has occurred." *Simasko v. Cnty. of St. Clair*, 417 F.3d 559, 562 (6th Cir.2005). Similarly, here, on a motion for judgment on the pleadings, the Court seeks to answer the indistinguishable question of "whether the complaint contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The fact that *Simasko* involved addressing this question within the framework of the qualified immunity analysis is of no consequence to the applicability of the Sixth Circuit's holding therein to this case.

concerning her employer. 470 F.3d at 258–59. Consequently, she contends the presumption of *Rose* does not apply here. In support, plaintiff cites the following passage in *Rose:*

> In short, the rule we adopt today simply recognizes the fact that it is insubordination for an employee whose position requires loyalty *to speak on job-related issues* in a manner contrary to the position of his employer, and, as the Supreme Court has recognized, 'employees may always be discharged for good cause, such as insubordination. . . .' *Elrod*, 427 U.S. at 366, 96 S.Ct. 2673.

*Rose*, 291 F.3d at 923 (emphasis added). Plaintiff asserts this language limits the exception in *Rose* to only speech on matters implicating or addressing her employment.

 In the case of a policymaking/confidential employee, however, the employee's political or policy views *are* job-related issues because the employee's political loyalty to his or her employer "is an essential requirement of the efficient functioning of the workplace." *Rose*, 291 F.3d at 923. The determination for the Court, therefore, is not whether the content of plaintiff's speech necessarily addresses plaintiff's employment conditions or concerns her employer directly, but whether her speech could lead the employer not to trust the employee to *loyally* implement the employer's practices. *Latham*, 395 F.3d at 266–67; *Rose*, 291 F.3d. at 922 ("This rule flows logically from the Supreme Court's recognition in the political patronage cases that the government has a legitimate interest in securing employees who will loyally implement its policies."). "When [a policymaking/confidential employee] speaks in a manner that undermines the trust and confidence that are central to his position, the balance definitively tips in the government's favor because an overt act of disloyalty necessar-

ily causes significant disruption in the working relationship between a confidential employee and his superiors." *Id.* at 923 (citing *Pickering*, 391 U.S. at 570 n. 3, 88 S.Ct. 1731.).

Here, plaintiff's refusal to apologize to her political opponent is no less job-related than Simasko's refusal to support his superior's campaign for judgeship. In both cases, the employee was expected to be "loyal" to a particular party and/or "loyally implement" government policies. The speech or refusal to speak in both instances unquestionably related to the employee's politics and thereby implicated the employer's political loyalty concerns. Unlike an employee who engages in speech that very plainly does not implicate loyalty concerns and bears no relationship to her employer's interests in administering his office, such as the expression of personal religious beliefs in *Scarbrough, supra*, an assistant county prosecutor's allegation of "corruption," a legally significant term, very plainly implicates her loyalty to the elected officeholder whom she serves and relates to the performance of her duties as a prosecutor.

Lastly, plaintiff objects that the magistrate judge failed to recognize and weigh the effect of the demanded apology on plaintiff's personal beliefs and political interests. However, the magistrate judge need not have relied on the *Pickering* balance at all in this case because where the presumption in favor of the government outlined in *Rose* applies, as it does here, "an individualized balancing of interests is unnecessary." *Rose*, 291 F.3d at 923. Consequently, the R & R's application of the *Pickering* balance test in this case was unnecessary.

In conclusion, defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim because plaintiff cannot show that she engaged in constitutionally

protected speech. Plaintiff occupied a position for which political loyalty was itself a legitimate criterion and plaintiff's speech (or refusal to speak) related to her political or policy views, therefore a presumption arises that her speech adversely affected a central aspect of her working relationship with defendant, and defendant's discharge of plaintiff did not violate the Constitution. Accordingly, plaintiff's objections are overruled.

## D. Qualified Immunity

Plaintiff contends that the issue of immunity is moot because she intends to file a stipulated notice of dismissal as to her claims against defendant in his individual capacity. Counsel for defendant indicates that consent to the dismissal was provided by email. (*See* Doc. No. 68 at 1298). As of the writing of this opinion, however, no such stipulation has been filed. Accordingly, plaintiff's claims against defendant in his individual capacity have not been dismissed and the Court will therefore address defendant's qualified immunity arguments.

■■■■■ "In order to prevail in a § 1983 action for civil damages from a government official performing discretionary functions, the defense of qualified immunity that our cases have recognized requires that the official be shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity analysis proceeds in two stages. First, the Court must consider the "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201,

121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If that question is answered in the affirmative, the Court next asks "whether the right was clearly established ... in light of the specific context of the case...." *Id.* "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir.2003) (internal quotation omitted). When a defendant raises a qualified immunity defense, the burden is on the plaintiff to prove that defendant is not shielded by qualified immunity. *Silberstein,* 440 F.3d at 311.

■■■ The Court accepts the conclusion of the magistrate judge that even if plaintiff could demonstrate a violation of her First Amendment rights, defendant is entitled to qualified immunity on that claim in his individual capacity. The magistrate judge concluded that plaintiff failed to present any argument that would allow the Court to conclude that defendant's conduct violated a right that was clearly established at the time in question. (Doc. No. 29 at 180.) Indeed, as the R & R indicated, defendant is entitled to qualified immunity by virtue of the fact that the law was not fully developed such that a reasonable prosecutor could not say that his conduct was clearly unlawful under these circumstances. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *Feathers,* 319 F.3d at 848.

Plaintiff objects that "[i]t was clear under established law that no elected public official could require an employee to engage in speech that was not job-related and that was harmful to that employee's interests and therefore Defendant is not immune from liability...." (Doc. No. 34 at 212.) Nevertheless, plaintiff's supplemental brief in support of her objections does not offer any analysis, argument, or support for this proposition. Therefore, her objection is overruled. *See Miller v. Cur-*

*rie*, 50 F.3d 373, 380 (6th Cir.1995) ("objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.") (citation omitted).

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to convert defendant's motion for partial judgment on the pleadings into one for summary judgment is **DENIED.** Further, with the exception of the magistrate judge's consideration of plaintiff's September 18, 2009 letter, plaintiff's objections are **OVERRULED,** and the conclusion of the R & R is **ACCEPTED.** Defendant's motion for partial judgment on the pleadings is **GRANTED** and Count I is hereby **DISMISSED.**

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*
(Doc. 14)

KATHLEEN B. BURKE, United States Magistrate Judge.

Pursuant to the January 25, 2012, Order of Reference (Doc. 6), the Partial Motion for Judgment on the Pleadings (the "Motion") (Doc. 14) filed by Defendant Victor Vigluicci ("Defendant" or "Vigluicci") is before the undersigned for a Report and Recommendation. In the Motion, Vigluicci seeks Judgment in his favor only on Count I of the three-Count Complaint filed by Plaintiff Tommie Jo Marsilio ("Plaintiff" or "Marsilio"). Count I is titled "42 U.S.C. § 1983, First Amendment—Freedom of Speech." Doc. 1, p. 4; Doc. 14.[1] In Count I, Marsilio alleges that Vigluicci, the Portage County Prosecutor, terminated her from her former position as an assistant county prosecutor because she "exercise[ed] her rights pursuant to the First Amendment of the United States Constitution." Doc. 1, p. 4, ¶ 21.

■■■ The Motion has been briefed fully.[2] As discussed below, the Motion should be granted because Plaintiff's former position as an assistant county prosecutor was a confidential/policymaking position. Under well established case law, public employees who hold confidential/policymaking positions do not enjoy protection from being terminated for speech related to political or policy matters. Moreover, Vigluicci is also entitled to qualified immunity in his individual capacity[3] with respect to Count I.

### I. Factual Allegations[4]

Plaintiff was employed by Defendant as an assistant prosecutor from July 2007

---

1. Counts II and III are not at issue on this Motion. Count II is titled "Fourteenth Amendment—Equal Protection" and Count III is titled "Ohio Sex Discrimination."

2. Defendant filed the Motion on March 30, 2012. Doc. 14. On June 4, 2012, Plaintiff filed a Brief in Opposition. Doc. 20. On June 18, 2012, Defendant filed a Reply Memorandum in Support of the Motion. Doc. 21.

3. Marsilio sued Vigluicci in both his official and individual capacities. Doc. 1.

4. The facts recited herein are taken from the Complaint and from documents referred to in the Complaint, copies of which Defendant and Plaintiff have attached to their Briefs filed in connection with the Motion for Judgment on the Pleadings. In ruling on a motion to dismiss, a court may consider: (1) documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 924–25 (N.D.Ohio 2009). Plaintiff and Defendant agree that the Court may consider attachments to the Rule 12 Briefing that are referenced in the Complaint and that are central to the Plaintiff claim(s). Doc. 14, p. 2, FN 2; Doc. 20, p. 4, FN 3. Those attachments include the advertisement at issue (Doc. 14–2) and correspon-

through September 18, 2009. Doc. 1, ¶ 2. Plaintiff was terminated from her employment on September 18, 2009. Doc. 1, ¶ 2. During her term of employment, Plaintiff accumulated a good work record. Doc. 1, ¶ 3. At all relevant times, Defendant was the Portage County Prosecutor. Doc. 1, ¶ 4.

During 2009, Plaintiff was a candidate for the elected public office of Portage County Municipal Judge. Doc. 1, ¶ 5. During that candidacy, Plaintiff prepared an advertisement that was proposed to run in the local news media. Doc. 1, ¶ 6. The proposed advertisement did not identify Plaintiff as being employed by the Portage County Prosecutor. Doc. 1, ¶ 7; 14–2. The proposed advertisement included the following language: "The 'Good Old Boys' Say Elect Kevin Poland[5]—Real People Say Elect Tommie Jo Marsilio—She is not a member of the Ravenna 'Good Old Boys' corruption club—Tommie Jo is one of us." Doc. 14–2. In September 2009 Plaintiff distributed a copy of the proposed advertisement to her local political party's central committee and her campaign committee. Doc. 1, ¶ 8. Without Plaintiff's knowledge or consent, a copy of the proposed advertisement was given to Plaintiff's opponent by someone unknown to Plaintiff. Doc. 1, ¶ 9. Thereafter, Defendant received a copy of Plaintiff's proposed advertisement. Doc. 1, ¶¶ 9–10, Doc 20–2.

After receiving a copy of Plaintiff's proposed advertisement, on September 14, 2009, Defendant conducted a meeting with Plaintiff to discuss the proposed advertisement. Doc. 1, ¶ 10. During that meeting, Defendant told Plaintiff to stop all circulation of the proposed advertisement and to apologize to her opponent or she would be fired. Doc. 1, ¶ 11. On September 14,

2009, Plaintiff sent a memo to Defendant memorializing the conversation, and advising Defendant that the speech at issue was protected political speech. Doc. 1, ¶ 12; 14–3. On September 15, 2009, Defendant responded in writing to Plaintiff, restating that she should cease distribution of the proposed advertisement and apologize to her opponent. Doc. 1, ¶ 13; Doc. 14–4; Doc. 20–1. In his September 15, 2009, letter Defendant stated, in part:

... you [Plaintiff] have made a written allegation of "corruption" against a fellow attorney and elected public official. When asked to produce any evidence of corrupt activity on the part of this individual at our meeting on September 14, 2009 you were unable to do so. As prosecutors and law enforcement officers, such allegations by us against others are very serious and carry enormous ramifications. The mere allegation of such conduct against an attorney or public official will cause irreparable damage to character and reputation, both of which are the hallmarks of any successful attorney or public official. As my representative in the community, I expect you to act with discretion and professionalism at all times. We do not publicly allege illegal conduct against anyone without the filing of formal charges by Complaint or Indictment. The publication of such allegations without foundation or basis is contrary to my philosophy of operating this office in an ethical, professional manner.

Doc. 14–4; Doc. 20–1. Defendant also indicated that, if Plaintiff did not take both steps he requested by September 18, 2009, Plaintiff's employment with the Portage County Prosecutor's Office would terminate. Doc. 1, ¶ 13; Doc. 14–4; Doc. 20–1.

---

dence between Plaintiff and Defendant dated September 14th, 15th and 18th of 2009 (Docs. 14–3; 14–4; 20–1; 20–2).

**5.** Kevin Poland was an attorney and elected public official. Doc. 14–4, Doc. 20–1.

Plaintiff "did not comply with Defendant Vigluicci's directive and her employment was terminated by Defendant Vigluicci on September 18, 2009." [6] Doc. 1, ¶ 14; Doc. 14–3; Doc. 20–2.

## II. Standard for Ruling on a Motion for Judgment on the Pleadings

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Tp. of Comstock,* 592 F.3d 718, 722 (6th Cir.2010) (citing *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511–12 (6th Cir.2001) (internal citations omitted)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz,* 592 F.3d at 722 (citing *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007) (internal citations and quotation marks omitted)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Federal Rule of Civil Procedure 8(a)(2)). A defendant is entitled to "fair notice of what the ... claim is and the ground upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.). While great detail is not required, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *see also Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F.Supp.2d 914, 924–25 (N.D.Ohio 2009) (citing and relying on *Tucker v. Middleburg–Legacy Place,* 539 F.3d 545, 550 (6th Cir.2008) and *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) for the proposition that specific facts are not necessary).

Defendant does not argue that Plaintiff has not sufficiently pled facts to provide fair notice of what Plaintiff is claiming in Count I. Rather, Defendant asserts that, as a matter of law, Plaintiff does not have a First Amendment—Freedom of Speech claim and that Defendant is entitled to qualified immunity. Doc. 14; Doc. 20.

## III. Law and Analysis

In Count I, Plaintiff seeks vindication under 42 U.S.C. § 1983 for Defendant's alleged violation of her First Amendment rights. Doc. 1, ¶¶ 18–21. She alleges that Defendant as Portage County Prosecutor was acting according to policies, practices and procedures established by the governmental entity. Doc. 1, ¶ 23. She also alleges that her proposed campaign advertisement was protected speech pursuant to the First Amendment. Doc. 1, ¶ 24. Finally, she alleges that Defendant terminated her for exercising her rights pursuant to the First Amendment and that such conduct constitutes a violation of 42 U.S.C. § 1983. Doc. 1, ¶ 21.

"To state a claim under § 1983, a plaintiff must allege a violation of

---

**6.** It appears that Plaintiff may have acquiesced in Defendant's directive to cease circulation of the proposed advertisement but refused to apologize to her opponent in the judicial race. Doc. 14–3, Doc. 20–2.

a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Dominguez v. Correctional Medical Services,* 555 F.3d 543, 549 (6th Cir.2009); *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.2006). Because § 1983 "is not itself a source of substantive rights," the first step in a § 1983 claim therefore "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Defendant has not contested that he was acting under color of state law. Doc. 14; Doc. 21. Accordingly, the Court's focus in reviewing Plaintiff's § 1983 claim is on whether Plaintiff has sufficiently alleged a violation of a constitutional right.

■■■ Plaintiff alleges that her proposed campaign advertisement was protected speech under the First Amendment of the United States Constitution and that Defendant terminated her for exercising her rights pursuant to the First Amendment of the United States Constitution.[7] Doc. 1, ¶¶ 20–21. When an individual chooses to enter government service, that individual by necessity must accept certain limitations on her freedoms. *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for efficient provision of public services." *Id.* However, an individual who works for the government remains a citizen and there are limits to a public employer's ability to restrict an individual's liberties. *Id.* at 419, 126 S.Ct. 1951.

■■■ "To establish a prima facie case of First Amendment retaliation under 42 U.S.C. § 1983, Appellant must demonstrate that: (1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived of some benefit; and (3) the protected speech was a "substantial" or "motivating factor" in the adverse action."[8] *Farhat v. Jopke,* 370 F.3d 580, 588 (6th Cir.2004) (citing *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003)).

### A. Plaintiff's speech was not protected constitutionally.

When analyzing whether the Plaintiff was engaged in constitutionally protected speech, it must first be determined whether the speech can be "characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). As discussed in greater detail *infra,* Plaintiff's speech constituted speech on a matter of public concern. Also, as discussed *infra,* Plaintiff was a confidential/policymaking employee. Therefore, the governmental interests in this case outweigh Plaintiff's First Amendment rights. Accordingly, Defendant is entitled to judgment as a matter of law on Count I of Plaintiff's Complaint.

### 1. Plaintiff's speech constituted speech on a matter of public concern.

In her Brief, Plaintiff separates her "speech" into two categories: (a) the cam-

---

7. In her Complaint, Plaintiff does not specifically allege that her refusal to apologize constitutes protected speech. Doc. 1.

8. Defendant's motion is resolved favorably to Defendant based on the Court's review and analysis of the first of the three prong of the three part test for establishing a prima facie case of a First Amendment retaliation claim. Accordingly, it is not necessary for the Court to consider the second and third prongs.

paign advertisement, as to which Plaintiff alleges Defendant attempted to impose a prior restraint; and (b) her refusal to apologize to her judicial opponent, which Plaintiff alleges involved an attempt by the Defendant to compel speech. Doc. 20, pp. 6, 12. Plaintiff did not plead this distinction in her Complaint but, even if she had, that would not require the Court to conduct a separate analysis of each of the two categories delineated by the Plaintiff. *See Riley v. National Federation of the Blind of NC, Inc.*, 487 U.S. 781, 796–798, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (recognizing that compelled speech is entitled to First Amendment protection but not establishing a separate framework for analyzing a compelled speech claim versus a compelled silence claim); *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3rd Cir.2005) (indicating that, if an entity can restrict speech, it may also compel speech).

 The determination as to whether speech is on a matter of public concern is a question of law. *Connick*, 461 U.S. at 148, FN. 7, 103 S.Ct. 1684. To determine whether the speech constitutes speech on a matter of public concern, the "content, form, and context of a given statement" in light of the whole record must be reviewed. *Id.* at 148–149, 103 S.Ct. 1684. If speech "cannot be fairly considered as relating to any matter of political, social or other concern to the community" said speech generally will not be deemed to be speech on a matter of public concern and government employers should have wide latitude in the management of their offices "without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146, 103 S.Ct. 1684.

Defendant concedes, for purposes of the Motion, that Plaintiff's campaign advertisement is speech that addresses matters of public concern. Doc. 14–1, p. 5. Accordingly, it is not necessary for the Court to set forth an analysis regarding whether the speech at issue in this case constitutes speech on a matter of public concern.

**2. The *Pickering* balance weighs in favor of the Defendant.**

**a. The *Pickering* balancing test.**

 Having determined that Plaintiff's speech constitutes speech on a matter of public concern, the court must next employ the balancing test set forth in *Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir.1995). Under the *Pickering* balancing test, "the interests of the employee, as a citizen, in commenting upon matters of public concern" are weighed against "the interest of the State, as an employer, in promoting efficiency of the public services it performs through its employees." *Dambrot*, 55 F.3d at 1185 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731). "The *Pickering* balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150, 103 S.Ct. 1684. When applying the *Pickering* balance, if the employee's speech is determined to constitute speech on a matter of public concern and if the employee's free speech interests outweigh the efficiency interests of the government, then an employee's First Amendment rights have been violated.[9] *Dambrot*, 55 F.3d at 1186.

**9.** If a court determines that the employee's free speech interests outweigh the governmental interests, then the court must determine whether the First Amendment violation was a substantial or motivating factor in the employee's termination and, if it was, whether the employer can demonstrate that the employee would have been terminated if it were not for the speech. *Dambrot*, 55 F.3d at 1186.

#### b. The *Elrod/Branti* exception.

 Subsequent to *Pickering,* a line of cases emerged leading to the creation of the *Elrod/Branti* exception, i.e., if the employer "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved," the employee can be dismissed solely on the basis of political affiliation. *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In cases where the *Elrod/Branti* exception applies, the *Pickering* balance is deemed to tip in favor of the government as a matter of law. *Rose v. Stephens,* 291 F.3d 917, 921 (6th Cir. 2002) (discussed *infra* ).

In *Elrod,* the Supreme Court rejected, as justification for the wholesale dismissal of government employees based on their political affiliation, the argument that political loyalty of employees is necessary to protect the governmental interest that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod,* 427 U.S. at 367, 96 S.Ct. 2673. "That interest," the Supreme Court stated, "can be fully satisfied by limiting patronage dismissals to policymaking positions." *Id.* at 372, 96 S.Ct. 2673. In *Branti,* the Supreme Court recognized that, under *Elrod,* "party affiliation may be an acceptable requirement for some types of government employment" (445 U.S. at 517, 100 S.Ct. 1287) but held that the exception did not apply to an assistant county public defender because "[t]he primary, if not the only, responsibility of an assistant public defender is to represent individual citizens in controversy

with the State." *Branti,* 445 U.S. at 519, 100 S.Ct. 1287. The Court expressly noted the distinction between the role of a public defender and "the broader public responsibilities of an official such as a prosecutor." *Id.* FN. 13.[10] The *Elrod/Branti* exception thus limits the First Amendment rights of policymaking or confidential employees.

In *McCloud v. Testa,* 97 F.3d 1536, 1557 (6th Cir.1996), the Sixth Circuit set forth four categories of positions that fall within the *Elrod/Branti* exception. The Sixth Circuit expressly did so for the guidance of district courts in future cases such as this one. *Id.* The four categories are:

**Category One:** positions specifically named in relevant federal, state, county or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;

**Category Two:** positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;

**Category Three:** confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions or confidential advisors.

---

**10.** However, because *Branti* did not involve a prosecutor or assistant prosecutor, the Court noted that it expressed no opinion as to whether a deputy prosecutor could be dismissed on grounds of political party affiliation or loyalty. *Branti,* 445 U.S. at 519, FN. 13, 100 S.Ct. 1287.

**Category Four:** positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.

*Id.*

 The Sixth Circuit has applied the *Elrod/Branti* exception in contexts other than discharges for political affiliation, including cases involving terminations of confidential/policymaking employees for actual speech. *Rose,* 291 F.3d at 921. In *Rose,* the Sixth Circuit "adopted the rule that, where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law." *Id.* The Sixth Circuit reasoned that the foregoing rule flows logically from the political patronage cases and that the government has a legitimate interest in securing employees who will loyally implement its policies. *Id.* at 922. "Permitting the government to dismiss employees who fall within the policymaking or confidential categories when they voice opinions on political or policy-related issues is an appropriate means of promoting that interest because the government already enjoys the right to choose or dismiss those employees on the basis of their political views." *Id.* Because an overt act of disloyalty necessarily causes significant disruption in the working relationship between confidential employees and their superiors, the balance under *Pickering* tips in favor of the government and "it is appropriate to presume that the government's interest in efficiency will predominate." *Id.* at 923.

### c. Application of the *Elrod/Branti* exception.

Based on the evolution of the *Elrod/Branti* exception and the Sixth Cir-

cuit's application of those principles, the Court must determine: (1) whether Marsilio's speech related to political or policy views; and (2) whether Marsilio, as an assistant county prosecutor, was a confidential or policymaking employee.

### i. Marsilio's speech was related to political or policy views.

Both Defendant and Plaintiff agree that the Plaintiff's speech related to politics. Doc. 1; Doc. 14–1, p. 9; Doc. 20, p. 12. However, Plaintiff argues that the speech must be job-related to fall within the *Elrod/Branti* exception. Doc. 20, p. 12. Contrary to Plaintiff's position, speech need not be job-related to fall within the *Elrod/Branti* exception. While the Sixth Circuit in *Rose* recognized that "it is insubordination for an employee whose position requires loyalty to speak on job-related issues in a manner contrary to the position of his employee," that does not mean that the speech must be job-related to fall within the *Elrod/Branti* exception.

 In *Simasko v. County of St. Clair,* 417 F.3d 559 (6th Cir.2005), the Sixth Circuit upheld the termination of an assistant county prosecutor where the termination was allegedly based on the plaintiff's failure to support his supervisor's judicial candidacy and his failure to persuade his brother to refrain from publicly supporting the supervisor's opponent. Plaintiff seeks to distinguish *Simasko* from this case on the basis that *Simasko* is a political affiliation case. Doc. 20, p. 12, FN 6. *Simasko* is not simply a political affiliation case; the Sixth Circuit clearly stated in *Simasko* that "[t]he *Elrod/Branti* exception applies not only to discharges based on political affiliation, but also to terminations based on actual speech." *Simasko,* 417 F.3d at 562 (citing *Rose v. Stephens,* 291 F.3d 917, 921 (6th Cir.2002)).

The facts in *Simasko* are similar to this case. Here, Plaintiff's speech or unwillingness to speak was political and/or related to policy views. In *Simasko,* after losing to his supervisor in a primary race for a judicial position, the plaintiff refused to acquiesce to his supervisor's demands that he publicly support her in the general election (he chose to remain neutral) and that he convince his brother not to support her opponent. *Id.* Similar to Marsilio, who asserts that Vigluicci's demand for an apology was an effort to compel speech, Simasko also did not want to speak as his supervisor demanded. *Simasko* demonstrates that speech need not be job-related to invoke the *Elrod–Branti* exception and that speech, whether it is compelled or restrained, is also covered by the exception. Accordingly, the analysis in *Simasko,* which involved application of the *Elrod/Branti* exception to a case not specifically involving job-related speech should not be disregarded as suggested by Plaintiff.

The Court agrees with the parties that Marsilio's speech, which related to a judicial election, concerned politics and/or policy views. Also, as discussed, Plaintiff has failed to convince this Court that the speech at issue must be job-related to fall within the *Elrod/Branti* exception. Accordingly, the first of the two *Elrod/Branti* exception requirements is met, i.e., Plaintiff's speech concerned politics and/or policy views.

## ii. Marsilio, as an assistant county prosecutor, was a confidential/policymaking employee.

As discussed above, the Sixth Circuit has established a framework to guide district courts in determining which public employees occupy confidential/policymaking positions and also has held specific positions to fall within the *Elrod/Branti* exception. In *McCloud,* the Court of Appeals described four categories of positions that are confidential/policymaking. In *Simasko* and *Monks v. Marlinga,* 923 F.2d 423 (6th Cir.1991), the Sixth Circuit determined that assistant county prosecutors in Michigan fall within the exception. While the Sixth Circuit has not expressly addressed the position of assistant county prosecutor in Ohio, the District Court for the Southern District of Ohio has. In *Collins v. Allen,* 2006 WL 2505928 (S.D.Ohio 2006), that court applied the *Elrod/Branti* exception, holding that the employment relationship between an Ohio elected prosecutor and an assistant prosecutor requires personal loyalty and a high degree of trust and confidence. 2006 WL 2505928, \*8.

Plaintiff argues that the Defendant's reliance on *Monks* and *Collins* is misplaced and that neither the United States Supreme Court nor the Sixth Circuit has set forth a bright line rule that assistant prosecutors are automatically exempt from First Amendment speech protections. Doc. 20, p. 11. As such, Plaintiff asserts that the Court cannot reach the issue whether Plaintiff was a confidential/policymaking employee without engaging in fact finding. Doc. 20, pp. 3–4. Plaintiff is wrong; fact-finding is not required. The question whether a public employee occupies a confidential/policymaking position is to be determined based on " 'the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office.' " *Monks,* 923 F.2d at 425 (quoting *Williams v. River Rouge,* 909 F.2d 151, 154 (6th Cir.1990)).

Plaintiff also seeks to distinguish *Monks* because that case involved the application of a Michigan statute that delineated the duties and role of assistant prosecutors. The statute provided that an assistant prosecutor must " 'perform any and all duties pertaining to the office of prosecut-

ing attorney.'" *Monks,* 923 F.2d at 425–426 (citations omitted). As a result, the Sixth Circuit held that "the job of assistant prosecutor is a policy-making position." *Id.*

The Ohio statute that permits prosecutors to appoint assistants does not specify their role in the way that the Michigan statute does.[11] However, the Attorney General of Ohio has filled that gap in several opinions, the most recent of which issued in 2011. In the 2011 opinion, the Ohio Attorney General, relying in part on prior Ohio Attorney General opinions and the decision in *Bennett v. Celebrezze,* 34 Ohio App.3d 260, 518 N.E.2d 25 (Lorain County 1986), described the role of assistant prosecutors in Ohio as follows:

> ... the General Assembly has not changed the duties or role of assistant county prosecuting attorneys. Assistant county prosecuting attorneys are appointed by county prosecuting attorneys and continue to act in their stead.
>
> * * *
>
> [I]t has long been the accepted opinion in this state that an assistant, is for all practical purposes, the alter ego of the prosecuting attorney and is authorized to act in his place in almost all matters. An assistant county prosecuting attorney is thus appointed to perform the duties of, and exercise the powers conferred upon, the county prosecuting attorney.

Ohio Attorney General Opinion 2011–041, *2 (November 14, 2011) (the "2011 Ohio Attorney General Opinion") (internal quotations and citations omitted).

Plaintiff argues that, because the 2011 Ohio Attorney General Opinion was issued to answer the question whether an assistant county prosecutor can serve as a school board member,[12] its language as to the role of an assistant county prosecutor is not applicable here. To the contrary, the delineation in the 2011 Ohio Attorney General Opinion of the role of an assistant county prosecutor is instructive and persuasive. Because the 2011 Ohio Attorney General Opinion interprets the role of an assistant county prosecutor in Ohio in a manner virtually identical to the role of an assistant county prosecutor in Michigan, the undersigned concludes that the Sixth Circuit's decisions in *Monks* and *Simasko* can and should be applied to this case.

Even if *Monks* and *Simasko* were not determinative, Plaintiff's assistant county prosecutor position constitutes a category two position under *McCloud* because the position is one "to which a significant portion of the total discretionary authority available to category one position-holders [in this case county prosecutors] has been delegated ...." *McCloud,* 97 F.3d at 1557. This is so notwithstanding the fact that O.R.C. 309.06(A) does not detail the duties of assistant prosecutors.[13] Indeed,

---

**11.** O.R.C. § 309.06(A) states, in pertinent part:

> The prosecuting attorney may appoint any assistants ... who are necessary for the proper performance of the duties of his office and fix their compensation, not to exceed, in the aggregate, the amount fixed by the judges of the court of common pleas....

**12.** The 2011 Ohio Attorney General Opinion addressed whether "an assistant prosecuting attorney may serve simultaneously as a member of the board of education of a city school

district located within the county in which he is employed as an assistant prosecuting attorney." Ohio Attorney General Opinion 2011–041.

**13.** Defendant also relies on another statute, O.R.C. § 124.11(A), which provides in pertinent part that assistants to county prosecuting attorneys are in the unclassified service. Plaintiff argues that the Defendant's reliance on that statute is misplaced because whether she was a member of the classified service is not a fact before the Court. Doc. 20, p. 11. The Court will not address O.R.C. § 124.11(A)

*McCloud* indicates that "[c]ategory two is constructed to recognize that it may be necessary to deny First Amendment protected not just to positions at the very top of any state administrative hierarchy, but in some cases to those occupying levels a bit further down the hierarchy" and "to capture those who would otherwise be category one policymakers, except the federal government, state, county, or municipality has chosen for whatever reason not to set out the responsibilities of such a position in a statute, ordinance, or regulation." 97 F.3d at 1557, FN. 31. As noted above, in *Collins,* the Southern District of Ohio determined that the position of assistant county prosecutor in Ohio "requires both personal loyalty and a very high degree of trust and confidence." *Collins,* 2006 WL 2505928, *8 (relying on the *Pickering* balancing test as applied in *Bibbs v. Newman,* 997 F.Supp. 1174 (S.D.Ind.1998), which also involved the termination of an assistant county prosecutor). The court in *Collins* went on to hold that a prosecutor's interest in having assistant prosecutors of his choosing in whom he can have trust and confidence outweighs an assistant prosecutor's First Amendment rights. *Id.*

Indeed, Plaintiff, in her September 14, 2009, memorandum, recognized that she viewed herself as the alter ego of Defendant when she stated, "The county has had the benefit of saving tens of thousands of dollars on *my* watch." Doc. 14–3 (emphasis added). This statement was a tacit if not a clear acknowledgement by Plaintiff that, when she performed her duties, she was acting in Defendant's stead. This acknowledgement, coupled with the 2011 Ohio Attorney General Opinion regarding the role of assistant prosecutors and rele-

vant case law, leads the undersigned to conclude that Plaintiff, as an assistant county prosecutor, fell within category two under *McCloud* and thus held a confidential/policymaking position.

For the reasons set forth herein, the second of the two *Elrod/Branti* exception requirements is met, i.e., Plaintiff was a confidential/policy making employee.

### d. Application of the *Pickering* balancing test.

Because Plaintiff held a confidential/policymaking position and her speech was related to political or policy views the *Elrod/Branti* exception applies and the *Pickering* balance therefore weighs in favor of the Defendant. *See Rose,* 291 F.3d at 921 ("where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law.")

Even if the Court did not find the *Elrod/Branti* exception applicable to this case, the *Pickering* balance nevertheless would weigh in favor of Defendant. *See Collins,* 2006 WL 2505928, *8 (applying *Pickering* to an Ohio assistant county prosecutor position). Under the *Pickering* balancing test, "the interests of the employee, as a citizen, in commenting upon matters of public concern" are weighed against "the interest of the State, as an employer, in promoting efficiency of the public services it performs through its employees." *Dambrot,* 55 F.3d at 1185 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731). "The *Pickering* balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public."

because it is unnecessary to do so in order to decide the Motion. However, the Court notes that the Sixth Circuit has stated that any ambiguity about whether an employee is confidential/policymaking is to be construed in

fact of the governmental defendant when the position is "unclassified or non-merit under state law." *McCloud,* 97 F.3d at 1557 (citing *Rice v. Ohio Dept. of Transp.,* 14 F.3d 1133, 1140 (6th Cir.1994)).

*Connick,* 461 U.S. at 150, 103 S.Ct. 1684. In his communication to the Plaintiff, the Defendant stated, in part: "As my representative in the community, I expect you to act with discretion and professionalism at all times. We do not publicly allege illegal conduct against anyone without the filing of formal charges by Complaint or Indictment. The publication of such allegations without foundation or basis is contrary to my philosophy of operating this office in an ethical, professional manner." Doc. 14–4; Doc. 20–1. Plaintiff's interest in speaking about the "Ravenna 'Good Old Boys' corruption club" (Doc. 14–2) cannot be said to outweigh Defendant's governmental interest in having loyal assistants whom he could trust to operate in "an ethical, professional manner." Doc. 14–4, Doc. 20–1.

Accordingly, for the reasons set forth herein, Defendant did not violate Plaintiff's First Amendment—Freedom of Speech rights.

### B. Qualified Immunity

Because Defendant did not violate Plaintiff's First Amendment—Freedom of Speech rights, it is unnecessary to address the issue of qualified immunity. However, as discussed *infra,* the Court has considered the defense of qualified immunity and determined that, even if Plaintiff could demonstrate a violation of her First Amendment—Freedom of Speech rights, Defendant is entitled to qualified immunity on that claim in his individual capacity.

 Qualified immunity does not protect governmental entities, but can shield a governmental official from individual capacity liability. *Everson v. Leis,* 556 F.3d 484, 493 (6th Cir.2009). Generally, governmental officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "[Q]ualified immunity was designed to give 'ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Caudill v. City of Kenton,* 2012 WL 1621372, *3 (N.D.Ohio May 9, 2012) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). A plaintiff bears the burden to show that a defendant is not entitled to qualified immunity. *Caudill,* 2012 WL 1621372 at *3.

 To evaluate a claim of qualified immunity, courts apply a two-prong test. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). A court generally should first look at whether "[t]taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. at 201, 121 S.Ct. 2151; *cf. Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (courts may use their discretion to determine which of the two *Saucier* prongs should be evaluated first). If the answer to this first question is no, then the defendant is entitled to qualified immunity and it is not necessary for a court to continue in its analysis. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If the answer to the first question is yes, then the court shall determine whether the constitutional right alleged to have been violated was clearly established. *Id.* To be a "clearly established" right, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Application of the doctrine of qualified immunity is a question of law. *Thomas v. Whalen,* 51 F.3d 1285, 1289 (6th Cir.1994). *See also Provience v. City of Detroit,* 2012 WL 1094326, *4 (E.D.Mich. March 31, 2012) (citing *Jeffers v. Heavrin,* 10 F.3d

380 (6th Cir.1993) (indicating that "reasonableness" in the context of a qualified immunity analysis is a question of law.")

Plaintiff has not satisfied her burden of establishing that Defendant is not entitled to qualified immunity. Doc. 20, p. 6. First, as discussed *supra,* Plaintiff cannot demonstrate that Defendant violated her First Amendment—Freedom of Speech rights. Second, even if Plaintiff were able to establish a violation of her First Amendment—Freedom of Speech rights, she has presented no argument that would allow the Court to conclude that Defendant's conduct violated a right that was clearly established at the time in question. As discussed, the Sixth Circuit on more than one occasion and the Southern District of Ohio in at least one case have concluded that an assistant county prosecutor was not entitled to First Amendment protection. Even if Plaintiff had succeeded in convincing the Court that Defendant is not entitled to judgment on the pleadings because those cases are distinguishable or the law in the Sixth Circuit was not clearly developed on the issue, Defendant would be entitled to qualified immunity by virtue of the fact that the law was not fully developed. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. A reasonable prosecutor could not say that Defendant's conduct was clearly unlawful in light of the law existing at the time of Defendant's action. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034 (indicating that the unlawfulness must be apparent in light of pre-existing law).

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Partial Motion for Judgment on the Pleadings (Doc. 14) be **GRANTED.**

August 16, 2012